IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 16-cr-00529-DKW-1 |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION FOR IMMEDIATE RELEASE** |
| vs. | |
| SHAWN RODRIGUES, | |
| Defendant. | |

Approximately 50 months into his 120-month term of imprisonment, inmate Shawn Rodrigues asks the Court to reduce his sentence to "time served" because his age (54 years) and alleged obesity, combined with the possibility he might be *reinfected* with COVID-19, constitute what he believes are "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. No. 165 at 2–3; Dkt. No. 165-1 at 3, 8, 23.

The Court concludes, however, that Rodrigues' claimed circumstances are not "extraordinary and compelling" because he does not have any health conditions that put him at a high risk of becoming seriously ill if he contracts the virus; his previous encounter with the virus was asymptomatic; and there are currently only three positive COVID-19 cases among the inmate population at the facility where Rodrigues is incarcerated. And even if that were not the case, Rodrigues is not

entitled to a sentence reduction because the sentencing factors do not militate in his favor.[1]  Accordingly, Rodrigues' motion is DENIED.

## FACTUAL & PROCEDURAL BACKGROUND

### A.  Relevant Factual Background

On September 29, 2016, Defendant Shawn Rodrigues pled guilty to two counts of possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2; and one count of attempt to commit the same crime.  *See* Dkt. No. 71; Dkt. No. 98 at 4; *cf.* Dkt. No. 36.  Rodrigues was ultimately held responsible for 286.8 grams of "ice" (high-purity methamphetamine).  Dkt. No. 98 at 9.  As a result, Rodrigues was subject to a 10-year mandatory minimum term of imprisonment, followed by a 5-year mandatory term of supervised release.  Dkt. No. 98 at 22; 21 U.S.C. § 841(b)(1)(A).  The Sentencing Guidelines yielded a recommended range of 120 to 121 months' imprisonment.  Dkt. No. 98, ¶ 90.  Accordingly, on January 15, 2019, this Court sentenced Rodrigues to 120 months' imprisonment and 5 years of supervised release. Dkt. Nos. 106, 108.

In imposing this sentence, the Court adopted the presentence investigation report (PSR) in full, Dkt. No. 109 at 1, which indicates Rodrigues is 5 feet 6 inches tall and weighs 184 pounds (Body Mass Index of 29.7).  Dkt. No. 98, ¶ 68.  The PSR

---

[1] *See* 18 U.S.C. § 3582(c)(1); U.S.S.G. § 1B1.13 cmt. n.1.

also states that Rodrigues "advised that he is healthy, has no history of health problems, and does not take any prescription medication." *Id.* at ¶ 68.

Rodrigues is currently 54 years of age and incarcerated at Terminal Island FCI,[2] a low-security federal correctional institution located in Los Angeles County, California.[3]  On May 7, 2020, Rodrigues tested positive for COVID-19.  Dkt. No. 165-4 at 16.  For approximately the next two weeks, Rodrigues was "screened for COVID-19 symptoms" and his vitals were checked on all but three days.  *Id.* at 7–8.  Although Rodrigues' pulse ranged between 73–119 beats per minute, Rodrigues "denie[d]" having a "cough, SOB [shortness of breath], muscle pain, fatigue, sore throat, HA [headache], new loss of taste and smell, and/or chills."  *Id.*  On May 23, 2020, Rodrigues' COVID-19 diagnosis was declared "[r]esolved."  *Id.* at 12–13.  Having served approximately 50 months of his 120-month sentence and, assuming good conduct, Rodrigues is scheduled to be released on January 19, 2025.[4]

## LEGAL STANDARD

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010)

---

[2]*Find an Inmate*, FEDERAL BUREAU OF PRISONS (BOP), https://www.bop.gov/inmateloc/ (last visited Sept. 1, 2020).
[3]*FCI Terminal Island*, BOP, https://www.bop.gov/locations/institutions/trm/.
[4]*See supra* n.3. On July 7, 2016, the Court granted the Government's motion to detain Rodrigues and since then he has been in federal custody.  Dkt. No. 10; Dkt. No. 29 (denying Rodrigues' motion for reconsideration of detention).

(alterations in original) (quoting 18 U.S.C. § 3582(b)). Such circumstances must be "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." *See* 18 U.S.C. § 3582(c)(1)(B); *see also Dillon*, 560 U.S. at 827, 831; *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003). Congress carved out such an exception in 18 U.S.C. Section 3582(c)(1), as amended by the First Step Act of 2018 (FSA), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).[5] Under Section 3582(c)(1), courts may "modify a term of imprisonment" where, as here, the inmate files a motion, if three requirements are satisfied:

> (1) the inmate "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion" on behalf of the inmate "or the lapse of 30 days from the receipt of such a request" by the relevant warden;[6]

> (2) the inmate has established that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and

> (3) the court has "consider[ed] the factors set forth in [18 U.S.C. Section] 3553(a)" and found that the inmate is "not a danger to the safety of any other person or the community, as provided under [18 U.S.C. Section] 3142(g)."

*See* 18 U.S.C. § 3582(c)(1); U.S.S.G. § 1B1.13 (policy statement). The inmate bears

---

[5]The FSA amended the *procedural requirements* under Section 3582(c)(1)(A) to permit inmates to directly petition courts for a sentence reduction, whereas pre-amendment, an inmate could only petition the BOP Director, who then had the discretion to move the court to reduce the inmate's sentence based upon "extraordinary and compelling reasons." *See* FSA § 603(b), 132 Stat. at 5239; U.S.S.G. § 1B1.13 cmt. n.4.; *see also United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019); *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019).
[6]The Government concedes that Rodrigues has satisfied the statutory exhaustion requirements. Dkt. No. 354 at 4; *see also* Dkt. No. 165-1 at 5; Dkt. No. 165-6; *cf. United States v. Kealoha*, No. CR 04-00265 DKW, 2020 WL 3735773, at *3–4 (D. Haw. July 6, 2020).

the burden of establishing the requirements for a sentence reduction by a preponderance of the evidence. *See, e.g.*, *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998); *see also United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *Walton v. Ariz.*, 497 U.S. 639, 650 (1990) (holding that a defendant's due process rights "are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency"), *overruled on other grounds by Ring v. Ariz.*, 536 U.S. 584, 609 (2002).

## DISCUSSION

The parties contest only the second and third requirements for a sentence reduction under Section 3582(c)(1), as outlined above. For the reasons that follow, Rodrigues has satisfied neither of these two requirements.

## I. Extraordinary and Compelling Reasons

Section 3582(c)(1) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" (the "Commission"). Rodrigues has not shown that "extraordinary and compelling" circumstances exist for three fundamental reasons. First, there is no evidence he has a condition that puts him at a high risk of becoming seriously ill from COVID-19. Second, nothing suggests there is a high probability Rodrigues *will be reinfected*

with the virus.  Third, the fact that he contracted the virus once and recovered without experiencing any symptoms is strong evidence that, should Rodrigues be re-infected, his ability "to provide self-care within the . . . correctional facility" would *not* be "substantially diminishe[d]" and he, in fact, would be "expected to recover." *See, e.g.*, U.S.S.G. § 1B1.13 cmt. n.1(A).

Congress did not delineate the bounds for what constitutes "extraordinary and compelling," except to state that "[r]ehabilitation of the defendant alone" is not enough.  28 U.S.C. § 994(t).  Instead, Congress directed the Commission to promulgate policy statements "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *Id.*  The Commission did just that under Application Note 1 to U.S.S.G. § 1B1.13, albeit prior to the enactment of the FSA.  The Commission outlined the following four categories of circumstances that may constitute "extraordinary and compelling reasons" for a sentence reduction:

> (A) the inmate is "suffering from a terminal illness," or a "serious" physical or cognitive condition "that substantially diminishes" the inmate's ability "to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover";
>
> (B) the defendant is at least 65 years old, is "experiencing a serious deterioration in physical or mental health because of the aging process," *and* "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less";
>
> (C) family circumstances involving "the death or incapacitation of the caregiver of the defendant's minor child," or the "incapacitation of the

defendant's spouse or registered partner," leaving the inmate as "the only available caregiver for the spouse or registered partner"; or

(D) "[a]s determined by the Director of the [BOP]," in the inmate's case there is "an extraordinary and compelling reason other than, or in combination with," the other three reasons described.

*See* U.S.S.G. § 1B1.13 cmt. n.1.

As Rodrigues acknowledges, Dkt. No. 165-1 at 7, this Court has repeatedly declined the invitation to usurp Congress' and the Commission's authority to expand the above definition of "extraordinary and compelling."[7]  In particular, this Court has applied *Stinson v. United States*, 508 U.S. 36, 44–47 (1993), considered various arguments, and concluded that because Application Note 1 to U.S.S.G. § 1B1.13 does not run afoul of the Constitution or a federal statute, and is not "plainly erroneous or inconsistent" with Section 1B1.13, the Commission's "commentary is a binding interpretation of the phrase '[extraordinary and compelling].'"[8]  *Stinson*, 508 U.S. at 47; *see also Dillon*, 560 U.S. at 824 (explaining that a district court's

---

[7]*See, e.g.*, *United States v. Aruda*, No. 14-CR-00577-DKW, 2020 WL 4043496, at *3 (D. Haw. July 17, 2020); *United States v. Kealoha*, No. CR 04-00265, 2020 WL 3735773, at *5–6 (D. Haw. July 6, 2020); *United States v. Kazanowski*, No. 15-CR-00459, 2020 WL 3578310, at *6 (D. Haw. July 1, 2020); *United States v. Lum*, No. 18-CR-00073, 2020 WL 3472908, at *3 (D. Haw. June 25, 2020).

[8]Although *Stinson* was decided before *United States v. Booker*, 543 U.S. 220, 246 (2005), in which the Supreme Court held that the Guidelines are advisory, not mandatory, the Supreme Court later held in *Dillon* that *Booker* is inapplicable in sentence-modification proceedings under 18 U.S.C. § 3582(c)(2) because such proceedings are fundamentally different, *see Dillon v. United States*, 560 U.S. 817, 828–30 (2010), and, as such, the relevant Guidelines policy statement "constrained" courts.  *See id.* at 825–27.  The same rationale applies to Section 3582(c)(1), the companion statutory provision to the one addressed in *Dillon*.

discretion to modify a sentence under Section 3582(c)(2) is "constrained by the Commission's statements").[9]  In so holding, the Court is among the legion of district courts that, for various reasons, "continue to follow the guidance of the Sentencing Commission's policy statement limiting the scope of 'extraordinary and compelling reasons' that warrant compassionate release under § 3582(c)(1)."[10]

Here, Rodrigues attempts to show "extraordinary and compelling circumstances" based on his age, weight, and concerns about COVID-19.  Dkt. No. 165-1 at 8, 14.  Thus, the only relevant "extraordinary and compelling" scenario identified by the Commission is subpart (A) of the Commission's application note. *See* U.S.S.G. § 1B1.13 cmt. n.1(A).[11]  Accordingly, the parties correctly note that

---

[9]Numerous courts have appropriately turned to *Stinson* in this context and reached the same conclusion. *See, e.g.*, *United States v. Garcia*, No. 4:05-CR-40098, 2020 WL 2039227, at *3–5 (C.D. Ill. Apr. 28, 2020); *United States v. Sandoval*, No. CR14-5105RBL, 2020 WL 3077152, at *3–4 (W.D. Wash. June 10, 2020) (citing nine other decisions); *United States v. Rollins*, No. 99 CR 771-1, 2020 WL 3077593, at *1–2 (N.D. Ill. June 10, 2020) (explaining further that Application Note 1(D) to U.S.S.G. § 1B1.13 is not inconsistent with § 3582(c)(1)(A)(i) because it may still be "applie[d] with full force if the *Director* invokes it in moving for a sentence reduction" and the "fact that Note 1(D) is unavailable if the *defendant* moves for a sentence reduction does not render it inconsistent with § 3582(c)(1)(A)(i); rather, Note 1(D) is simply inoperative in that circumstance").

[10]*See, e.g.*, *Riley v. United States*, No. C19-1522 JLR, 2020 WL 1819838, at *8 (W.D. Wash. Apr. 10, 2020); *Eberhart*, 2020 WL 1450745, at *2; *United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *2 (E.D. Wash. March 31, 2020); *United States v. Gross*, No. 2:04-CR-032-RMP, 2019 WL 3538967, at *2 (E.D. Wash. Aug. 2, 2019); *United States v. Shields*, No. 12-CR-00410-BLF-1, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019).

[11]Rodrigues does not contend that the *Director of the BOP* has determined that there exists in this case some "other" extraordinary or compelling reason for a reduction in sentence. *See* U.S.S.G. § 1B1.13 cmt. n.1(D).  Contrary to Rodrigues' liberal approach, the Court cannot simply "disregard the policy statement's deference to the BOP Director in determining what 'other reasons' qualify as 'extraordinary and compelling.'"  Dkt. No. 165-1 at 7 n.2. *See, e.g.*, *Rollins*, 2020 WL 3077593, at *1–2; *Aruda*, 2020 WL 4043496, at *4.

the Court applies the following framework.  Dkt. No. 165-1 at 7; Dkt. No. 169 at 3.

> [T]o establish "extraordinary and compelling reasons" stemming from the current coronavirus pandemic, and for such a finding to be consistent with Application Note 1 to U.S.S.G. § 1B1.13, an inmate must necessarily establish the following three elements by a preponderance of the evidence: (1) the inmate is "suffering from a terminal illness," or a "serious" physical or cognitive condition; (2) that condition puts the inmate at a high risk of becoming seriously ill from COVID-19; and (3) if the inmate were to contract COVID-19, the inmate's ability "to provide self-care within the . . . correctional facility" would be "substantially diminishe[d]" and the inmate would "not [be] expected to recover."

*See, e.g., United States v. Kazanowski*, No. 15-CR-00459-DKW-5, 2020 WL 3578310, at *7 (D. Haw. July 1, 2020) (quoting *See, e.g.*, U.S.S.G. § 1B1.13 cmt. n.1(A); *United States v. Kealoha*, No. CR 04-00265 DKW, 2020 WL 3735773, at *7 (D. Haw. July 6, 2020).  Rodrigues founders on each prong.

## A. The Risk of Becoming Seriously Ill From COVID-19

First, Rodrigues does not qualify as an individual at a high risk of becoming seriously ill if he contracts the virus.  The Centers for Disease Control and Prevention (CDC) has stated that individuals at an "increased risk of severe illness from COVID-19" include people "aged 65 years and older,"[12] as well people of all ages

---

[12]*See Coronavirus Disease 2019 (COVID-19): People at Increased Risk for Severe Illness – Older Adults*, CDC (Aug. 16, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Aug. 31, 2020).  The CDC states in broad terms that "[a]s you get older, your risk for severe illness from COVID-19 increases," *i.e.*, "people in their 50s are at higher risk for severe illness than people in their 40s," "people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s," and that the "greatest risk for severe illness from COVID-19 is among those aged 85 or older."  Because the CDC also notes that "8 out of 10 COVID-19-related deaths reported in the United States have been among adults

with the following underlying health conditions: (i) "Chronic kidney disease"; (ii) "COPD (chronic obstructive pulmonary disease)"; (iii) "Immunocompromised state (weakened immune system) from solid organ transplant"; (iv) "Obesity (body mass index [BMI] of 30 or higher)"; (v) "Serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies"; (vi) "Sickle cell disease"; and (vii) "Type 2 diabetes mellitus."[13]

Consequently, Rodrigues' age (54) is clearly not a risk factor.   As for Rodrigues' claim that he "weighs 204 lbs." and is therefore "obese" because his BMI is 32.9, *e.g.*, Dkt. No. 165-1 at 2, 8, there is no evidence in the record to substantiate Rodrigues' current weight.   Indeed, Rodrigues' statement regarding his weight is suspiciously bereft of a single citation to any supporting evidence.   *Id.* at 2.   Nor is there any mention of Rodrigues' weight in the medical records he attached to his motion.   Dkt. No. 165-4.   After the Government pointed out this evidentiary gap,

---

aged 65 years and older," *id.*, for purposes of this motion, the Court will consider age 65 as the threshold for determining whether extraordinary and compelling circumstances exist, insofar as age is concerned, to warrant a sentence reduction.

[13]*See Coronavirus Disease 2019 (COVID-19): People at Increased Risk for Severe Illness – People with Certain Medical Conditions*, CDC (Aug. 14, 2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 3, 2020).   The CDC also notes that people with the following conditions "*might* be at an increased risk for severe illness from COVID-19": Asthma (moderate-to-severe); cerebrovascular disease (affects blood vessels and blood supply to the brain); cystic fibrosis; hypertension or high blood pressure; immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; neurologic conditions, such as dementia; liver disease; pregnancy; pulmonary fibrosis (having damaged or scarred lung tissues); smoking; thalassemia (a type of blood disorder); and Type 1 diabetes mellitus.   *Id.* (emphasis added).

Dkt. No. 169 at 4, 6–7, Rodrigues' rejoinder is that the "[G]overnment . . . points to no contrary evidence to rebut Mr. Rodrigues' assertion about his current weight." Dkt. No. 170 at 3. But the Government is not required to rebut Rodrigues' bald assertion until Rodrigues has first shouldered the burden of proving by a preponderance of the evidence that he is entitled to a sentence reduction, *see, e.g.*, *Sprague*, 135 F.3d at 1306–07; *Jones*, 836 F.3d at 899; *Hamilton*, 715 F.3d at 337, including showing that he weighs 204 pounds. That he has clearly not done.

As a result, the Court is left with the fact that at sentencing Rodrigues was 5 feet 6 inches tall and weighed 184 pounds, Dkt. No. 98, ¶ 68, which yields a BMI of 29.7,[14] below the threshold BMI for concern. Therefore, Rodrigues has not shown that his age or BMI put him at a high risk of becoming seriously ill if he contracts COVID-19.

Second, Rodrigues' conditions are irrelevant, insofar as an "extraordinary and compelling" finding is concerned, unless he shows (at the very least) that there is a high risk of contracting the virus because of the number of positive COVID-19 cases at the facility where he is housed. Rodrigues has not done so.

Here, the risk of Rodrigues contracting COVID-19 at Terminal Island FCI is but a remote and speculative possibility. That facility currently houses a total of 913

---

[14]*See Adult BMI Calculator*, CDC (July 6, 2020), https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited Sept. 2, 2020).

inmates.[15]   While the facility once had a high number of confirmed coronavirus cases, that is not the current situation.   As of the date of this Order, the BOP's coronavirus-related data for Terminal Island FCI indicates there are: 3 inmates positive; 0 staff positive; 10 inmate deaths; 0 staff deaths; 621 inmates recovered; and 23 staff recovered.[16]   In other words, the number of positive cases at Terminal Island FCI is approximately 0.3% of the inmate population.   Rodrigues indicts the BOP's efforts to contain the virus *in the past*, Dkt. No. 165-1 at 9; Dkt. No. 170 at 4–6, but, statistically, Terminal Island FCI is now faring better than the surrounding area of Los Angeles County.[17]   Thus, the present statistics for Terminal Island FCI are hardly "extraordinary and compelling."

The salient fact in the risk analysis, however, is that Rodrigues was previously infected with the virus and recovered.   It bears emphasis that the CDC reports "[c]urrently, 6 months after the emergence of SARS-CoV-2 [the virus that causes

---

[15]*FCI Terminal Island*, BOP, https://www.bop.gov/locations/institutions/trm/ (last visited Sept. 2, 2020).

[16]*See COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Aug. 31, 2020).  On this public website containing the coronavirus-related data for BOP facilities, the BOP notes that it  "will update the open COVID-19 confirmed positive test numbers, recoveries, and the number of COVID-19 related deaths daily at 3:00 p.m.," and because the BOP "has begun additional testing of asymptomatic inmates to assist in slowing transmissions within a correctional setting," the data is expected to reflect an increase in the number of COVID-19 positive tests.  *Id.*

[17]*See United States COVID-19 Cases and Deaths by County*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/county-map.html (last visited Sept. 1, 2020) (noting 2,416 cases per 100,000 residents in Los Angeles County, which equates to roughly 2.4% of the population).

COVID-19], there have been no confirmed cases of SARS-CoV-2 reinfection."[18] And that report presumably includes "correctional and detention facilities," as the CDC actively tracks the spread of the virus at these facilities.[19]  Rodrigues maintains, however, that the CDC has also reported that "[w]e do not know yet if people who recover from COVID-19 can get infected again"[20] and that "more information is needed."[21]  *See* Dkt. No. 165-1 at 15; Dkt. No. 170 at 8–9.  There is no reason to doubt that this is true.  But it certainly does not mean that there is a high risk that Rodrigues will be reinfected, especially where no such incident has been reported. In fact, the risk of reinfection in this case is even more speculative because roughly 68% of the total inmate population at Terminal Island FCI has previously contracted the virus and recovered.

Therefore, as numerous courts have concluded, Rodrigues' inchoate speculation about the possibility of reinfection is not an "extraordinary and compelling" reason for a sentence reduction because the immediate threat has

---

[18]*Duration of Isolation and Precautions for Adults with COVID-19*, CDC (Aug. 16. 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html (last visited Sept. 3, 2020); *SARS-CoV-2 Viral Culturing at CDC*, CDC (May 5, 2020), https://www.cdc.gov/coronavirus/2019-ncov/lab/grows-virus-cell-culture.html#:~:text=SARS%2DCoV%2D2%2C%20the,the%20scientific%20and%20medical%20community.
[19]*CDC COVID Data Tracker: Unique Populations*, CDC, https://covid.cdc.gov/covid-data-tracker/?utm_source=morning_brew#correctional-facilities (last visited Sept. 3, 2020).
[20]*See Test for Past Infection*, CDC (June 30, 2020), https://www.cdc.gov/coronavirus/2019-ncov/testing/serology-overview.html (last visited Sept. 3, 2020); more information is needed
[21]*Clinical Questions about COVID-19: Questions and Answers: Can People Who Recover from COVID-19 be Re-infected with SARS-CoV-2?*, CDC (Aug. 4, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html#:~:text=There%20is%20no%20firm%20evidence,to%20protect%20against%20reinfection. (last visited Sept. 3, 2020).

passed. *See, e.g.*, *United States v. Maldonado-Guillen*, No. 514CR00072, 2020 WL 4757076, at *3 (W.D.N.C. Aug. 17, 2020) ("Recovery from a positive COVID-19 diagnosis, particularly where the inmate suffered only minor symptoms, is not enough to show that extraordinary and compelling circumstances warrant Defendant's release."); *United States v. Shahbazpour*, No. 4:18-cr-557, 2020 WL 3791633, at *2 (N.D. Cal. July 7, 2020) (denying compassionate release because defendant had "already been exposed to and tested positive for COVID-19" and, thus, "the immediate threat to [defendant] has passed with no serious long-term complications for him"); *United States v. Zahn*, No. 4:18-cr-00150-JD-1, 2020 WL 3035795 (N.D. Cal. June 6, 2020) ("[T]he immediate threat to [defendant] has passed, fortunately with no serious complications of any kind. That is enough to find that he has not proffered an extraordinary and compelling reason for release under 18 U.S.C. § 3582(c)(1)(A)(i)."); *United States v. Molley*, No. CR15-0254, 2020 WL 3498482, at *2–3 (W.D. Wash. June 29, 2020) (holding "risk of reinfection" was not an "extraordinary and compelling" reason to release defendant from prison); *United States v. Davis*, No. 12-CR-712, 2020 WL 3790562, at *2–3 (S.D.N.Y. July 7, 2020) ("[T]he Court cannot conclude that the speculative risk of reinfection is either 'extraordinary' or 'compelling' within the meaning of the statute.").

### 2. Rodrigues' Health Concerns Can be Managed in a BOP Facility

Lastly, Rodrigues' situation is not "extraordinary and compelling" because he has not shown that, should he be reinfected with COVID-19, his ability "to provide self-care within the . . . correctional facility" would be "substantially diminishe[d]" and he would "not [be] expected to recover." *See, e.g.*, U.S.S.G. § 1B1.13 cmt. n.1(A); *Kealoha*, 2020 WL 3735773, at *7. Rodrigues contracted the virus once and did not experience any symptoms, such as a "cough, SOB [shortness of breath], muscle pain, fatigue, [or] sore throat" as a result of the virus. Dkt. No. 165-4 at 7–8. Rodrigues then recovered while at Terminal Island FCI and has not demonstrated that he is currently suffering from any "terminal" or "serious" lasting effects from the virus. *See* U.S.S.G. § 1B1.13 cmt. n.1(A). The fact that Rodrigues previously had an asymptomatic bout with the virus and recovered without any long-term, serious effects strongly suggests that if he were to be reinfected, Terminal Island FCI is equipped to cope with his symptoms, and he can be expected to recover. Numerous other courts agree. *See, e.g.*, *United States v. Myers*, No. CR 04-00363 SOM (04), 2020 WL 4722376, at *3 (D. Haw. Aug. 13, 2020) (finding absence of "extraordinary and compelling" circumstances where 61-year-old inmate with "asthma, heart problems, obesity, [and] prior cancers" had exhibited only low "peak expiratory flow" (slow exhale) after testing positive for COVID-19); *United States*

*v. Krietzman*, No. 17-CR-00477-BLF-1, 2020 WL 4368191, at *3 (N.D. Cal. July 30, 2020) (concluding inmate at FCI Terminal Island was not entitled to early release because there was "strong evidence that none of [defendant]'s medical conditions would induce a more severe illness from COVID-19 *since he already had an asymptomatic case of the virus*."); *United States v. Pinkston*, No. 606-026-1, 2020 WL 3492035 (S.D. Ga. June 26, 2020) (denying compassionate release for 70-year-old inmate who "recovered from his bout with COVID-19" because his "health was not sufficiently compromised by COVID-19 to qualify as a serious medical condition"); *United States v. Dan*, No. CR 15-00703 HG-01, 2020 WL 3453845, at *5 (D. Haw. June 24, 2020) (denying compassionate release where defendant "already tested positive for COVID-19" and did not suffer any symptoms "so severe as to require medical treatment or hospitalization"); *United States v. Silva*, No. 4:17-CR-554-PJH-03, 2020 WL 4039218, at *3 (N.D. Cal. July 17, 2020) ("The court finds that [defendant]'s own medical history reflecting lack of symptoms and apparent recovery after contracting COVID-19 minimize the risk of potential complications from COVID-19 due to his underlying medical conditions.").  In short, conditions that can be managed in prison are not a basis for compassionate release.  *See* U.S.S.G. § 1B1.13 cmt. n.1(A).

Because Rodrigues has not carried his burden of showing that there are "extraordinary and compelling reasons" to justify his early release under 18 U.S.C. § 3582(c)(1), he is not entitled to a sentence reduction.

## II.   Section 3553(a) Factors

Even if extraordinary and compelling reasons supported compassionate release, the Court is not convinced the applicable factors in 18 U.S.C. § 3553(a) counsel in favor of reducing Rodrigues' sentence. *See* 18 U.S.C. § 3852(c)(1)(A).

Upon review of the relevant factors in Section 3553(a), Rodrigues' 120-month sentence is, as it was at sentencing, "sufficient, but not greater than necessary, . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public." *See* 18 U.S.C. § 3553(a)(2). This conclusion is borne out when considering "the nature and circumstances" of Rodrigues' offenses and his "history and characteristics." *Id.* § 3553(a)(1).

Rodrigues has a lengthy record of convictions and arrests dating back to when he was 19 years of age. Dkt. No. 98 at 11–17. For example, in 1998, he was convicted in Hawaii state court for promoting dangerous drugs (methamphetamine) and sentenced to a 5-year term of probation. *Id.* at ¶ 46. He violated his parole in 2001 because he failed to report to his probation officer, "was deceitful," "tested positive for methamphetamine on three occasions," failed to "maintain legitimate

employment," and "was afforded a 'myriad of chances' for substance abuse treatment, but he refused to address his drug addiction." *Id.* at 13. As a result, he was sentenced to a 10-year term of incarceration. *Id.* at ¶ 46. Two years later in 2003, Rodrigues was paroled, *id.*, only to have his parole revoked after two years for possession of methamphetamine, failure to obtain substance abuse treatment, and failure to report to his parole officer. *Id.* at 13. Rodrigues was paroled again in 2007, but that too was revoked after two years for, *inter alia*, possession of methamphetamine. *Id.* at ¶ 46; *see id.* at 13. In 2011, the maximum sentence for Rodrigues' 1998 conviction expired, *id.* at ¶ 46, and approximately four years later he committed the instant offense. *Id.* at ¶¶ 10–17. The quantity of "ice" involved (286.6 grams) in the instant offense far exceeded that at issue in his 1998 conviction (about 10 grams), evidencing substantial progression in the severity of the conduct. *Id.* at ¶¶ 18, 46.

Rodrigues' background is also replete with substance abuse, including alcohol, marijuana, crack-cocaine, methamphetamine, and Ecstasy. *Id.* at ¶¶ 71–74. In fact, Rodrigues admitted that "he committed the instant offense to support his drug habit" and "was under the influence of methamphetamine" during the commission of the crime. *Id.* at ¶ 71. While Rodrigues maintains he "has the tools, ambition, and motivation to succeed while on supervision," Dkt. No. 165-1 at 21, his history indicates otherwise. For that reason, a BOP facility seems the most

appropriate place for Rodrigues to receive "correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).

Rodrigues has served approximately 50 months of his 120-month sentence, having been incarcerated during the pre-trial phase since July 7, 2016. Dkt. No. 10; Dkt. No. 29. Releasing him now would mean he would not even come close to serving the 10-year mandatory minimum term of imprisonment for the offense to which he pled guilty. Dkt. No. 98 at 22. This would undoubtedly result in an "unwarranted sentence disparit[y] among defendants with similar records who have been found guilty of similar conduct." *See* 18 U.S.C. § 3553(a)(6). Indeed, despite having previously served multiple two-year periods of incarceration, followed by numerous opportunities under court supervision and drug treatment, Rodrigues' involvement in the instant offense and his continued drug use suggest that he was not deterred by his contact with the criminal justice system. Thus, as the Court found on January 15, 2019 when sentencing Rodrigues, the Court concludes today that 120 months' imprisonment is sufficient but not greater than necessary to achieve the statutory purposes of sentencing.[22]

---

[22]Because neither party specifically addresses whether Rodrigues poses "a danger to the safety of any other person or the community, as provided under [18 U.S.C. Section] 3142(g)," *see* 18 U.S.C. § 3582(c)(1); U.S.S.G. § 1B1.13, the Court does not reach this issue.

## <u>CONCLUSION</u>

For the reasons set forth herein, Rodrigues' Motion for Immediate Release, Dkt. No. 165, is DENIED.

IT IS SO ORDERED.

DATED: September 4, 2020 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

*United States of America vs. Shawn Rodrigues;* Criminal No. 16-00529 DKW-1; **ORDER DENYING DEFENDANT'S MOTION FOR IMMEDIATE RELEASE**