IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHAWN RODRIGUES,<br><br>Defendant. | Case No. 16-cr-00529-DKW-KJM<br><br>**ORDER DENYING DEFENDANT'S SECOND MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. SECTION 3582(c)(1)(A)(i)** |

Approximately 64 months into his 120-month term of imprisonment for the distribution of methamphetamine, Defendant Shawn Rodrigues asks the Court to reduce his sentence to time served or, in the alternative, to 78 months because: (1) if he were to re-contract COVID-19, his age and medical conditions increase his risk of severe illness, and/or (2) if he were sentenced today, he would be eligible for a 78-month sentence under the new "safety valve" provision of 18 U.S.C. § 3553(f) that took effect subsequent to his 2017 sentencing. *See* Dkt. Nos. 180, 188.

The Court DENIES Rodrigues' request because these bases, individually or together, do not present the requisite "extraordinary and compelling reasons" for such relief. *See* 18 U.S.C. § 3582(c)(1)(A)(i). Further, the relevant 18 U.S.C. § 3553(a) sentencing factors weigh against any sentence reduction.

## RELEVANT BACKGROUND

### I.  Conviction

On September 29, 2016, Defendant Shawn Rodrigues pled guilty to, *inter alia*, possession with the intent to distribute 286.8 grams of "ice" (high-purity methamphetamine) in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2—a crime with a ten-year mandatory minimum term of imprisonment. Dkt. Nos. 71; 98 at 1–2, 9. The Sentencing Guidelines yielded a recommended range of 97 to 121 months' imprisonment, which was adjusted to a range of 120 to 121 months due to the ten-year minimum. Dkt. No. 98, ¶ 90. Accordingly, on January 15, 2017, this Court sentenced Rodrigues to 120 months' imprisonment and five years' supervised release. Dkt. Nos. 106, 108. His projected release date, assuming "good time" credit, is January 19, 2025. *See* Dkt. No. 185 at 4.

### II.  Health

On May 7, 2020, Rodrigues tested positive for COVID-19. Dkt. No. 165-4 at 16. For the next two weeks, he was screened for symptoms on all but three days. *Id.* at 7–8. During these checks, Rodrigues "denie[d]" having serious symptoms like "cough, [shortness of breath], muscle pain, fatigue, sore throat, [headache], new loss of taste or smell, and/or chills." *Id.* On May 23, 2020, his diagnosis was declared "[r]esolved." *Id.* at 12–13.

Rodrigues now reports some health concerns. He has Class 1 (low-risk) obesity,[1] and he reports some symptoms consistent with "long-haul COVID," including chronic headaches, hypertension, and a racing heartbeat while exercising, leading to a provisional diagnosis of tachycardia.[2] Dkt. No. 180 at 3–4. He is 55 years old and is currently incarcerated at FCI Herlong in California.[3] He became fully vaccinated against COVID-19 after receiving his second dose of the Pfizer-BioNTech vaccine on January 20, 2021. Dkt. No. 184 at 75, 124.

On September 16, 2021, Rodrigues filed a Second Motion for Compassionate Release pursuant to Section 3582(c)(1),[4] arguing that he should be re-sentenced (1) because of his age and medical conditions in light of the COVID-19 pandemic and (2) because of recent "safety valve" sentencing changes. Dkt. No. 180. The Government opposed this motion on September 30, 2021, Dkt. No. 185, and Rodrigues submitted a Reply on October 4, 2021. Dkt. No. 188.

---

[1] A person whose Body Mass Index ("BMI") ranges from 30.0–35.0 is Class 1 obese. *Overweight and Obesity*, CDC (June 7, 2021) https://www.cdc.gov/obesity/adult/defining.html (last visited Oct. 15, 2021). As of August 6, 2021, Rodrigues stood five feet, six inches and weighed 204 pounds for a BMI of 32.9. Dkt. No. 184 at 57.
[2] At the time of sentencing, Rodrigues had a BMI of 29.7 and reported that he "[wa]s healthy [and] ha[d] no history of health problems." Dkt. No. 98, ¶ 68.
[3] *Find an Inmate*, FEDERAL BUREAU OF PRISONS ("BOP"), https://www.bop.gov/inmateloc/ (last visited Oct. 20, 2021) (BOP Register Number 09191-122).
[4] Rodrigues first moved for compassionate release on July 20, 2020, arguing that his obesity put him at heightened risk in case of reinfection. Dkt. No. 165. The Court denied that motion on the merits on September 4, 2020. Dkt. No. 172. Rodrigues moved for reconsideration, and the Court also denied that motion on the merits on September 21, 2020. Dkt. Nos. 173, 179.

## LEGAL STANDARD

Pursuant to Section 3582(c)(1), a district court may modify a final sentence if: (1) the incarcerated person exhausted his administrative remedies before appealing to the court; (2) "extraordinary and compelling reasons" warrant a reduction; and (3) the court finds that the relevant sentencing factors set forth in 18 U.S.C. § 3553(a) favor relief.  A court may deny Section 3582(c)(1) relief if *any one* of the three requirements is not met.  *United States v. Keller*, 2 F.4th 1278, 1284 (2021).  The parties dispute only the second and third requirements.[5]

## DISCUSSION

**I.    Rodrigues has not established an extraordinary and compelling reason to reduce his sentence.**

Neither Congress nor the Sentencing Commission has yet defined "extraordinary and compelling reasons" in the context of prisoner-brought compassionate release motions.  *United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021).  Thus, district courts appear to have the discretion to consider any reason the defendant raises, including changes in sentencing law.  *See id.* at 801.  *See id.*  Nonetheless, in this Court's view, neither of Rodrigues' given reasons constitutes an extraordinary and compelling reason to modify his sentence.

---

[5] The Government concedes that Rodrigues has exhausted his administrative remedies.  Dkt. No. 185 at 5.

### A. COVID-19

In evaluating whether risk from a communicable disease like COVID-19 presents an extraordinary and compelling reason for compassionate release, this Court considers not only (1) whether the defendant is a member of an at-risk group, but also (2) whether he is at a high risk of actually contracting the virus and (3) whether he is likely to suffer significant harm if he does.  *See, e.g.*, *United States v. Aruda*, 2021 WL 2345015 at *2 (D. Haw. June 8, 2021); *United States v. Blumenstein*, 2021 WL 1655823 at *4 (D. Haw. Apr. 27, 2021).

Although Rodrigues has established that he has certain comorbidities[6] that could increase his risk *were he to re-contract COVID-19*, he has not established that he is *likely* to do so.  First, he already had COVID-19 in May 2020, reducing

---

[6] Rodrigues is 55 years old, and he has Class 1 obesity, hypertension, provisionally diagnosed tachycardia, and a history of smoking.  Dkt. No. 180 at 3–4.  *See COVID-19: People with Certain Medical Conditions*, CDC, Oct. 14, 2021, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 15, 2021) (stating that obesity and "heart conditions such as heart failure, coronary artery disease, cardiomyopathies, and possibly high blood pressure" can increase risk of severe illness from COVID-19); Sarah Varney, *US obesity epidemic could undermine effectiveness of a Covid-19 vaccine*, CNN, Aug. 5, 2020, https://cnn.it/397yACN (stating that vaccine effectiveness for people with obesity is uncertain); *Older Adults*, CDC (Aug. 2, 2021), https://bit.ly/2UNVvfN (last visited October 15, 2021) ("Older adults are more likely to get very sick from COVID-19. . . . . The risk increases for people in their 50s and increases in 60s, 70s, and 80s."); U.S. Department of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons*, May 2015 (revised Feb. 2016), https://bit.ly/3w1lvUR (last visited Oct. 15, 2021) ("[A]n inmate's physiological age averages 10–15 years older than his or her chronological age due to the combination of stresses associated with incarceration and the conditions that he or she may have been exposed to prior to incarceration.").

the likelihood of re-infection.[7]  Dkt. No. 165-4 at 7–16.  Second, the present incidence of the virus at FCI Herlong is low: as of October 20, 2021, there are only 2 active cases among prisoners and 15 among staff.[8]  And third, Rodrigues is fully vaccinated against the virus.  Dkt. No. 184 at 75, 124.  Even with currently percolating variants of the virus, *see* Dkt. No. 180 at 7–10, only about .015% of vaccinated persons in the United States have subsequently developed a serious case of COVID-19.[9]  Thus, it is most *unlikely* that Rodrigues will become reinfected at all, much less with a severe case.

Moreover, even if Rodrigues *were* to contract the virus again, there is no indication that his condition would precipitously diminish or that he would not be expected to recover.  Indeed, Rodrigues recovered well from his asymptomatic

---

[7]*COVID-19: Reinfection with COVID-19*, CDC (updated Aug. 6, 2021), https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited Oct. 20, 2021) ("Cases of reinfection with COVID-19 have been reported, but remain rare.").
[8]*COVID-19 Coronavirus: COVID-19 Cases*, BOP, (updated Oct. 21, 2021), https://www.bop.gov/coronavirus/ (last visited Oct. 21, 2021).  Cases at FCI Herlong recently spiked and then fell again.  On September 7, 2021, cases among inmates and staff members numbered 0 and 6, respectively.  Dkt. No. 180 at 11.  By September 15, they numbered 90 and 8 before reducing again to 2 and 15 at the time of this writing.  *Id.*  As the Government points out, the spike may have been caused by increased testing in September.  Dkt. No. 185 at 7.  At the height of the spike, Rodrigues appears to have tested negative for COVID-19.  *See* Dkt. Nos. 180 at 11; 184 at 3 (noting Rodrigues was tested on September 13); Dkt. No. 188 (failing to indicate a positive test result on October 4).
[9]More than 187 million Americans are fully vaccinated as of October 12, 2021, with only 27,297 having since been hospitalized with COVID-19.  *COVID-19 Vaccine Breakthrough Case Investigation and Reporting*, CDC (Oct. 12, 2021), https://www.cdc.gov/vaccines/covid-19/health-departments/breakthrough-cases.html (last visited Oct. 21, 2021).

bout with the same virus while in BOP custody in May 2020.[10]  Dkt. No. 165-4 at 7–8.  And out of 366 prisoners and 30 staff known to have contracted the virus at FCI Herlong, none has died.[11]  Finally, the vaccination rate among the incarcerated at FCI Herlong is high.[12]  In light of all the circumstances, the Court finds that the pandemic is not an extraordinary and compelling reason to reduce Rodrigues' sentence.

### B. Sentencing Changes

Since Rodrigues was sentenced in 2017, the 18 U.S.C. § 3553(f) "safety valve" provision has changed.  The safety valve is a mechanism by which a court may impose a sentence below the otherwise applicable statutory mandatory minimum for certain drug offenders.  The First Step Act of 2018 broadened the provision,[13] but Congress explicitly chose not to make this change retroactive.

---

[10] There is no medical record evidence to confirm Rodrigues' speculation that his headaches, hypertension, and tachycardia are "after effects" of his May 2020 COVID-19 infection, *see* Dkt. No. 180 at 13.  *See generally* Dkt. No. 184.  Nor has he demonstrated that he would have fared any better outside BOP custody.

[11] *COVID-19 Coronavirus: COVID-19 Cases*, BOP (updated Oct. 20, 2021), https://www.bop.gov/coronavirus/ (last visited Oct. 20, 2021).  The overall U.S. death rate is 1.6%.  *COVID Data Tracker*, CDC (updated Oct. 20, 2021), https://covid.cdc.gov/covid-data-tracker/#global-counts-rates (last visited Oct. 20, 2021) (showing that out of 44,649,996 known cases in the United States, 719,694 have resulted in death).

[12] *COVID-19 Coronavirus: COVID-19 Vaccine Implementation*, BOP, (updated Oct. 21, 2021), https://www.bop.gov/coronavirus/ (last visited Oct. 21, 2021) (showing that 1,001 inmates at FCI Herlong have been vaccinated with a total incarcerated population of 1,364 for a rate of 73.4%, assuming a relatively consistent vaccination rate among transferees).

[13] The new provision applies unless the offender has *all three* of the following: "(A) more than 4 criminal history points . . . ; (B) a prior 3-point offense . . . ; and (C) a prior 2-point violent offense . . . ."  18 U.S.C. § 3553(f); *United States v. Lopez*, 998 F.3d 431 (9th Cir. 2021).  The

Pub. L. No. 115-391, 132 Stat. 5194, §§ 402(a)(1)(B)(1), 402(b) ("The amendments made by this section shall apply only to a conviction entered on or after the date of this enactment.").

At the time Rodrigues was sentenced, he was not safety valve eligible. That meant he was subject to his crime's 120-month mandatory minimum, and that is the sentence this Court imposed. Dkt. No. 180 at 16. If he were sentenced today, he *would* be safety valve eligible, making his sentencing range 78 to 97 months. *Id.* at 18. This, he argues, is a compelling reason to reduce his sentence.

Whether and/or when non-retroactive sentencing changes can ever justify relief under Section 3582(c)(1) is unsettled. *See* Dkt. No. 185 at 8–9 (describing the current state of the law). At the very least, this Court agrees that they do not *automatically* create extraordinary and compelling circumstances. *See United States v. Wills*, 997 F.3d 685, 688 (6th Cir. 2021) ("What the Supreme Court views as the 'ordinary practice' [of applying non-retroactive sentencing changes only prospectively] cannot also be an 'extraordinary and compelling reason' to deviate from that practice.") (quoting *Dorsey v. United States*, 567 U.S. 260, 280 (2012)). Rodrigues argues that the 2018 safety valve change creates an unjust disparity between himself and offenders sentenced after 2018. Dkt. No. 180 at 22. But re-

---

superseded analogue only applied if the offender had one or fewer criminal history points. 18 U.S.C. § 3553(f) (effective May 27, 2010 to Dec. 20, 2018).

sentencing Rodrigues on this basis would perversely result in another unjust disparity—one between himself and other offenders like him who were sentenced *prior* to 2018. Since there are no aggravating circumstances that make Rodrigues' 120-month sentence extraordinarily unjust, the Court finds that the safety valve change is not a reason to reduce Rodrigues' sentence.

II. **Even if extraordinary and compelling reasons supported a sentence reduction, Rodrigues' motion would still be DENIED because the relevant Section 3553(a) factors do not warrant such a reduction.**

To obtain Section 3582(c)(1) relief, a defendant must convince the Court that the Section 3553(a) factors weigh in his favor. The relevant factors here are:

> "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant; . . . (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . that . . . are in effect on the date the defendant is sentenced; . . . [and] (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*See* 18 U.S.C. § 3553(a) (formatting altered).

Rodrigues' criminal record reflects a general lack of respect for the law. *See* 18 U.S.C. § 3553(a)(1)–(2). For example, in 1998, he was convicted in Hawaii state court for promoting dangerous drugs (methamphetamine) and was

sentenced to five years' probation.  Dkt. No. 98, ¶ 46.  He violated probation in 2001 because he failed to report to his probation officer, "was deceitful," "tested positive for methamphetamine on three occasions," and failed to "maintain legitimate employment."  *Id.*  As a result, he was sentenced to ten years' incarceration.  *Id.*  Two years later in 2003, he was paroled, only to have his parole revoked after two years for possession of methamphetamine, failure to obtain substance abuse treatment, and failure to report to his parole officer.  *Id.*  He was paroled again in 2007, but that too was revoked after two years for, *inter alia*, possession of methamphetamine.  *Id.*  In 2011, the maximum sentence for Rodrigues' 1998 conviction expired, *id.*, and about four years later, he committed the instant offense.  *Id.* at ¶¶ 10–17.  The instant offense involved 286.8 grams of "ice"—an amount far exceeding that at issue in 1998 (about 10 grams), evidencing substantial progression in the severity of his conduct and no deterrence from his various terms of incarceration.  *See id.* at ¶¶ 18, 46.[14]

Further, Rodrigues was sentenced to the minimum possible punishment that was "in effect on the date [he wa]s sentenced," and, as discussed above, re-sentencing him now would create an "unwarranted sentence disparit[y] among defendants with similar records who have been found guilty of similar conduct."

---

[14]Much of the analysis in this paragraph is repeated from the Court's September 2020 Order denying Rodrigues' first motion for compassionate release.  *See* Dkt. No. 172 at 17–18.

*See* 18 U.S.C. § 3553(a)(4), (6).  Thus, the Court finds Rodrigues' 120-month sentence is, as it was in 2017 and as it was in 2020, appropriate to reflect the seriousness of his offense, to promote respect for the law, and to prevent unnecessary sentencing disparities among relevant defendants.

## CONCLUSION

For the reasons described herein, Rodrigues' Second Motion for Compassionate Release, Dkt. No. 180, is DENIED.

IT IS SO ORDERED.

Dated: October 21, 2021, at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*United States of America v. Shawn Rodrigues*; CR 16-00529 DKW-KJM; **ORDER DENYING DEFENDANT'S SECOND MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. SECTION 3582(c)(1)(A)(i)**